IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN LAMONT KELLY** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **EDWARD J. KLEM, THE DISTRICT ATTORNEY OF THE COUNTY OF DELAWARE, and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA** | : : : : : : | NO. 05-3843 |

**Norma L. Shapiro, S.J.**                                                                                  October 6, 2006

**MEMORANDUM & ORDER**

Kevin Lamont Kelly, a prisoner at SCI Mahanoy in Frackville, Pennsylvania, has filed a *pro se* petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254. Kelly's petition alleges five claims: 1) ineffective assistance of trial counsel for failing to call two alibi witnesses, Ernest Carter and Williamina Kelly[1]; 2) imposition of an unlawful sentence; 3) ineffective assistance of trial counsel for failing to challenge the introduction into evidence of an allegedly improper photo array; 4) ineffective assistance of trial counsel for failing to call alibi witness James "Ratboy" Fowlkes[2]; and 5) ineffective assistance of trial counsel for failing to investigate or call witness Williamina Kelly, who may have provided exculpatory testimony.[3] Magistrate Judge Peter B.

---

[1] Henceforth, "Kelly" refers to the petitioner. Williamina Kelly will always be designated by her first and last name.

[2] Kelly refers to this witness as James Faulks on his petition, but two private investigators independently identified him as James Fowlkes in their reports. It is presumed that they asked for the correct spelling of his name. Kelly also writes "Fowlkes" in his objections.

[3] Magistrate Judge Scuderi combined claims 1 and 5 because they both pertain to the failure to call Williamina Kelly. This is sensible but the claims are presented separately here to

Scuderi's Report & Recommendation is approved with regard to claims 1, 3 and 5.  The Magistrate Judge correctly concluded that claims 1, 3 and 5 were without merit.  The Magistrate Judge's recommendation is not approved with regard to claims 2 and 4.  Counsel will be appointed and the petition remanded for an evidentiary hearing to determine: (1) the factual basis underlying Claims 2 and 4; and (2) whether Kelly makes a sufficient showing of actual innocence so claims 2 and 4 may be considered on the merits although they are procedurally defaulted.  If this hearing establishes Kelly's "actual innocence" of the crime, the court may then evaluate claims 2 and 4 on the merits.

**I.    Background and Procedural History**[4]

Kelly, convicted on August 8, 1997 of murder, robbery and aggravated assault, is currently serving a sentence of life in prison plus 10 to 20 years.  At trial, the prosecution introduced evidence to show that Kelly and co-defendants[5] Clifford Harris and Tyrone Harris entered Sam London's apartment in the early morning hours of April 28, 1996 to rob London and acquire some cocaine.  London was a drug dealer, and Clifford Harris had known him for some time.  In an ensuing struggle, Kelly fired a gun, killed London and wounded Robert Keatley.  <u>Commonwealth of Pennsylvania v. Kelly</u>, No. 95-5187, slip op. at 1-2 (Pa. C.C.P. Del.Co., June 30, 1998).

At trial, the Harris cousins[6] identified Kelly as the shooter.  The Harrises testified that they

---

maintain fidelity to the petitioner's original *habeas* petition.

[4]A complete background is provided in the Report & Recommendation.  The facts presented here are only those which are relevant to this opinion.

[5]The co-defendants charges were severed prior to Kelly's trial.

[6]The exact relationship between Clifford Harris and Tyrone Harris is unclear, but Kelly refers to them as cousins in his reply brief, filed October 14, 2005.

had been drinking together and wanted to obtain some cocaine. Tyrone Harris and Kevin Kelly discussed robbing London at gunpoint. The Commonwealth's evidence also consisted of a photo array by which Keatley identified Kelly as the shooter. Kelly's defense counsel produced a single defense witness, a police detective who testified that Keatley failed to identify Kelly in a subsequent line-up. Kelly's defense counsel argued that the Harris cousins misidentified Kelly to get more lenient sentences. He also attempted to impeach them based on inconsistencies between their testimony and prior statements made to police. Id.

Kelly filed post-sentence motions, a direct appeal, and multiple petitions for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq. Kelly has been represented by seven different court-appointed attorneys[7], as Kelly repeatedly complained about their ineffectiveness in representing him and counsel serially withdrew from his defense.

*Trial*. At pre-trial hearings and trial, Kelly was represented by John Larkin. The jury found Kelly guilty on August 8, 1997. Mark P. Much was to represent Kelly during the sentencing phase of the trial; death was a potential sentence.

*Pre-Sentence Motion*. Three days after the jury verdict, Kelly filed a petition alleging ineffectiveness of trial counsel, and Steven C. Leach was appointed to represent him during sentencing and appeal. Kelly was sentenced to life plus ten to twenty years.

*Post-Sentence Motions*. Kelly, filing a motion for a new trial, alleged, *inter alia*, ineffectiveness of trial counsel; he also requested an evidentiary hearing. On January 29, 1998,

---

[7] John Larkin, Mark P. Much, Stephen C. Leach, G. Michael Green, Karen E. Friel, Hugh A. Donaghue and Howard J. Gallagher.

Kelly, filing an addendum to the post-sentence motion for a new trial, claimed ineffectiveness of trial counsel for failing to call Carter and Williamina Kelly (whose affidavit was attached). There was no mention of James Fowlkes; he had not yet been located and interviewed. Six weeks earlier, Kelly's counsel had submitted a motion requesting a private investigator to locate and interview potential witnesses that Kelly felt should have been called by counsel. Lennon Investigations was retained and interviewed James Fowlkes on February 3, 1998. In his interview, Fowlkes, a janitor at the Madison Grill, said that on the night of the crime he saw Kelly drinking in the Grill until 12:30 or 1:00 the next morning, when he left briefly with his sister-in-law and an unidentified man; Fowlkes stated that Kelly returned at 1:30 a.m. to 1:45 a.m. with his sister-in-law and departed again in the direction of his home. Fowlkes stated he did not see any guns. If Fowlkes had credibly testified to these facts at trial, it would have been highly relevant to a determination of Kelly's guilt; Robert Keatley testified that Kelly and the Harrises arrived at London's apartment at approximately 1:45 a.m. See Br. For Appellee, 199 WL 33840662 at *3 (Pa. Super.Ct., Jan. 8, 1999) (citing Notes of Testimony 8/6/97, pages 67-68).

Lennon's report was submitted to attorney Leach on February 17, 1998. See Pet'r's Objections, Ex. (1)(A) at 3. The evidentiary hearings on Kelly's post-sentence motions had already been held on February 6[8] and 12, 1998, so the court could not have considered the significance of Fowlkes' testimony and whether counsel's failure to locate and interview him was ineffective assistance. It is unclear why the court held an evidentiary hearing prior to receiving the investigation report it knew was forthcoming. Kelly's post-sentence motions were denied on

---

[8]The February 6 date was the result of a 30-day continuance to give extra time for the private investigator to locate and interview witnesses.

March 2, 1998. The court also issued an order authorizing payment of $500 to Lennon Investigations that same day.[9]

*Direct Appeal*.  Leach, continuing as Kelly's court-appointed counsel, timely filed a direct appeal of Kelly's sentence to the Superior Court; he claimed *inter alia*, sentencing error by the trial court and ineffective assistance of trial counsel for failing to call potential defense witnesses Ernest Carter and Williamina Kelly.  Fowlkes was not mentioned.[10]  The Superior Court, affirming the sentence on April 20, 1999, ruled that, with regard to those *two* uncalled witnesses, "Kelly ha[d] failed to sustain his burden of proof as to the witnesses' willingness and ability to cooperate and appear on behalf of the appellant; and the necessity of the proposed testimony in order to avoid prejudice." Commonwealth v. Kelly, No. 01386 Philadelphia 1998, slip op. at 5 (Pa. Super. Ct. Apr. 20, 1999); allocatur was denied by the Pennsylvania Supreme Court on September 2, 1999.

*PCRA (first)*.[11]  After his direct appeal failed, Kelly timely filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. Con. Stat. § 9541.  Again, Kelly claimed, *inter alia,* that his counsel was ineffective and had misguided him at trial.[12]  G. Michael

---

[9] It is possible the court's delay in ruling on Kelly's motion for funds to pay Lennon contributed to the delay in receiving the report.

[10] Kelly now claims that this omission was also an instance of ineffective assistance of counsel.  See Pet'r's Objections to R & R at 2.

[11] The judge assigned to hear the case on PCRA petition was Judge Toal, the judge who presided at the original trial.  Petitioner's motion for recusal, filed by letter on June 4, 2001, was denied.

[12] This PCRA motion mentioned Kelly's dissatisfaction with trial counsel, but did not address any alleged ineffectiveness of appellate counsel.

Green was appointed to represent Kelly and directed to file an amended PCRA petition.  Instead, Green filed a letter certifying there were no issues of merit and requested leave to withdraw.  The court allowed the withdrawal and dismissed the PCRA claims because ineffectiveness "ha[d] been thoroughly litigated and ruled on by the trial court and on appellate review in the direct appeal process."  Commonwealth v. Kelly, No. 5187-96, slip op. at 2 (Pa..C.C.P. Del.Cty.  Jul. 21, 2000).  On appeal, the Superior Court vacated the dismissal because Green's "no merit" letter was insufficient; it ordered appointment of new counsel with instructions to file an amended PCRA petition or a proper "no merit" letter.  Commonwealth v. Kelly, 778 A.2d 735 (Pa. Super. Ct. Apr. 24, 2001) (unpublished opinion).

*PCRA (second)*.  Kelly's amended PCRA petition, filed May 18, 2001,[13] presented similar claims to the previous petition, but in an attached memorandum, Kelly asserted that upon his arrest he had provided the names of at least five individuals who had come into contact with him on the morning of the homicide, including James "Ratboy" Fowlkes.  The memorandum also included a full paragraph explaining the relevance of Fowlkes's potential testimony as an alibi witness (Def.'s Mem. of Law in Supp. of Mot. For Post Conviction Collateral Relief, pt. A. at 2, May 18, 2001).  Kelly's memorandum and petition also mentioned his intention to claim that appellate counsel was ineffective as well.  Id., at 8.  Karen E. Friel was appointed counsel and ordered to file an amended PCRA petition.  Friel filed a supplemental PCRA motion that largely tracked Kelly's revised *pro se* motion.  It included, *inter alia*, specific mention of trial counsel's failure to locate and subpoena potential alibi witnesses including James Fowlkes.  On February 4,

---

13  Kelly filed an amended PCRA petition prior to being assigned new counsel as ordered by the Superior Court.

2002, a second private investigator (McNeil Investigations) submitted a report, having re-located Fowlkes who reiterated his story (that he and Kelly were together until the early morning on the night of the crime) and confirmed his willingness to testify.  Friel withdrew on February 6, 2002 and Hugh A. Donaghue was appointed as Kelly's counsel.  As directed, Donaghue filed yet another amended PCRA petition.  With regard to the claim of ineffectiveness for failure to investigate and subpoena Fowlkes and others, Donaghue stated his belief that the claim lacked merit because it was previously litigated and the private investigator's report "was not in favor of the defendant's argument."  (Suppl. Post Conviction Relief Act Pet. Of Def. at 3, Apr. 9, 2002).  His belief was incorrect, as the issue had only been litigated with regard to Ernest Carter and Williamina Kelly.  There was no mention of Fowlkes or other alibi witnesses aside from Carter and Williamina Kelly in earlier opinions.

      The PCRA petition was again dismissed after an evidentiary hearing.  Donaghue filed an appeal in Superior Court, but Kelly was unhappy with Donaghue's appellate brief because it presented four "boilerplate" claims (See Pet'r's Objections at 4) and ignored issues of previous counsel's ineffectiveness.  Kelly's *pro se* motion to remove counsel was denied.  Donaghue later requested leave to withdraw because he had been appointed to a new position.  On May 10, 2004, the Superior Court remanded the case to the Commonwealth PCRA court and ordered appointment of new counsel.  Kelly's next appointed attorney, Howard J. Gallagher, in a new PCRA appellate brief in Superior Court, argued that trial counsel was ineffective for: 1) failing to move to suppress a photo array; 2) conducting the defense without a strategy; 3) failing to call Kelly's girlfriend as an alibi witness; and 4) failing to call Williamina Kelly as a witness who would have implicated the co-defendant.  The Superior Court affirmed the denial of PCRA relief

on September 28, 2004.

*Habeas*.  Kelly, filing the present *habeas* petition *pro se* on July 17, 2005, claims that: (1) trial counsel was ineffective for failing to investigate and call two defense witnesses (presumably Williamina Kelly and Ernest Carter) to rebut the Commonwealth's witnesses; (2) the trial court erred in using facts outside of the trial proceedings to enhance Kelly's sentence; (3) trial counsel was ineffective for failing to move to suppress an allegedly improper photo array; (4) trial counsel was ineffective for failing to call James "Ratboy" Faulks [Fowlkes] as an alibi witness; and (5) trial counsel was ineffective for failing to call Williamina Kelly "who would have testified to the involvement of the co-defendants in the incident and exculpated petitioner."
(Pet. For Habeas Corpus at 9, 10 *verso*).

This *habeas* petition was referred to Magistrate Judge Peter B. Scuderi for a Report and Recommendation.  Magistrate Judge Scuderi recommended that the habeas petition be denied because claims 1, 3 and 5 lacked merit, and claims 2 and 4 were procedurally defaulted.  Kelly objected to this and contends that he did raise his counsel's ineffectiveness in failing to call James Fowlkes, both on direct appeal and in the PCRA proceedings.  Kelly also maintains he is "actually innocent" of the crimes for which he was convicted and that his innocence would have been established by the testimony of alibi witnesses who would have placed him "on the other side of town" at the time the crime occurred.  Kelly objects to the Magistrate Judge's findings on all five claims.  United States v. Garth, 188 F.3d 99, 108 (3d Cir. 1999) ("We have long recognized that a pro se petitioner's pleadings should be liberally construed to do substantial justice.").

**II. Discussion**

    **A. Standard of Review**

A district court reviews *de novo* those portions of a magistrate judge's report and recommendation to which objection is made. See 28 U.S.C. § 636(b)(1)(C).

    **B. Analysis of Claims**

        1. Claims 1, 3 and 5.

*Claim 1: Ineffective Assistance of Trial Counsel for Failing to Call two Defense Witnesses (Presumed to be Ernest Carter and Williamina Kelly) as Alibi Witnesses.*

Kelly argues that his trial counsel should have called Carter and Williamina Kelly as alibi witnesses. This claim was exhausted in state proceedings, so the issue is whether counsel was, in fact, ineffective. The right to effective counsel is guaranteed by the Sixth Amendment. Yarborough v. Gentry, 540 U.S. 1, 5 (2003).[14] In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for ineffectiveness claims. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel's representation fell below an objective standard of reasonableness. Id. at 687-88. Second, the defendant must show that the deficient performance prejudiced the defense by establishing a

---

[14]Note that a prisoner has no constitutional right to counsel in discretionary appeals or collateral post-conviction review. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction."); 28 U.S.C. § 2254 (i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254").

reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  See also Wiggins v. Smith, 539 U.S. 510 (2003); United States v. Booth, 432 F.3d 542 (3d Cir. 2005).  "Unless a defendant makes *both* showings, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687 (emphasis added).  The defendant bears a heavy burden to prove ineffective assistance of counsel in light of the strong presumption that the counsel's conduct was within the range of reasonable professional legal assistance. United States  v. Robles, 814 F. Supp. 1233, 1244 (E.D. Pa. 1993).

The Magistrate Judge concluded that trial counsel acted reasonably in deciding not to call Carter or Williamina Kelly.  At the post-conviction hearing on February 6, 1998, trial counsel testified that he attempted to subpoena Ernest Carter as a trial witness, but Mr. Carter refused to accept the subpoena and told the subpoena server that he would not be involved in the case. Commonwealth v. Kelly, No. 96-5187, slip op. at 4-5 (Pa. C.C.P. Del. C. June 30, 1998).  Carter's testimony also tended to corroborate the Commonwealth's case because he described a man similar to Kelly's size and weight in the vicinity of the crime and stated that one man was wearing a blue jogging suit similar to one the police found at Kelly's girlfriend's home.  Id.  Because Carter was an uncooperative and potentially damaging witness, counsel opted not to call him.

Williamina Kelly, Kelly's sister and an unwilling participant at the post conviction hearing, testified to having seen Tyrone Harris, Clifford Harris and Kevin Kelly arrive that night by automobile at the apartment of Juanita Harris, the mother of Tyrone Harris.  She later learned that Tyrone Harris was delivering a gun to his mother.  Shortly afterwards, she saw Ms. Harris walking towards the Delaware River.  Counsel testified that he had not called Ms. Kelly as a

witness because her testimony was based on hearsay, and he believed the only admissible portion of her testimony would be her observation of Juanita Harris walking toward the Delaware River. Counsel concluded that her testimony had no evidentiary value. Id. at 8.

In order to claim ineffectiveness for failure to call a witness under Pennsylvania law, a defendant must prove: (1) the existence and availability of the witness; (2) counsel's awareness of or duty to know of the witness; (3) the witness' willingness and ability to cooperate and appear on behalf of appellant; and (4) the necessity of the proposed testimony in order to avoid prejudice. Commonwealth v. Hall, 701 A.2d 190 (Pa. 1997). Both Carter and Williamina Kelly were uncooperative witnesses, and neither one would have offered compelling exculpatory testimony necessary to avoid prejudice. Counsel's decision not to call either of them should "be considered sound trial strategy," Strickland, 466 U.S. at 689, and is entitled to great deference. Kelly has not demonstrated that counsel was ineffective in his failure to call these two witnesses in view of the limited testimony they would have provided.

Even if ineffectiveness were presented here, the prejudice requirement of Strickland has not been satisfied. Neither witness would have been particularly helpful, and there was sufficient other evidence to support Kelly's conviction. See Medina v. DiGuglielmo, 461 F.3d 417 (3d Cir. 2006) (counsel was ineffective for failing to request witness competency hearing, but deficient performance was not prejudicial because circumstantial evidence was sufficient to support conviction); but see Outten v. Kearney, No. 04-9003, 2006 WL 2773076 at *20 (3d Cir. September 28, 2006) (ineffectiveness and prejudice found where counsel failed to conduct a reasonable investigation of defendant's background in violation of ABA standards, and jury's vote in favor of the death penalty was 7-5).

Because defendant has not showed ineffectiveness or prejudice in failing to call Carter and Williamina Kelly, Magistrate Judge Scuderi's recommendation that this claim be denied on the merits is approved.

*Claim 3: Ineffective Assistance of Counsel for Failing to Move to Suppress an Improper Photo Array*

Kelly claims that his trial counsel was ineffective for failing to move to suppress a photo array that he says was "tainted" (unduly suggestive). Robert Keatley, the victim who survived the crime of which Kelly was convicted, identified Kelly in a photo array conducted six months after the crime, but he failed to identify Kelly in a subsequent lineup conducted one month later.

Respondents concede that this claim was appropriately exhausted in state court, so the issue again is whether counsel's failure to challenge the photo array constituted deficient performance that prejudiced the defense under the Strickland test. Magistrate Judge Scuderi determined that even if Kelly met his burden of proving the photo array was impermissibly suggestive, see United States v. Lawrence, 349 F.3d 109 (3d Cir. 2003), the photo array identification was not sufficiently prejudicial because the case against Kelly did not rely solely upon the photo array identification. Kelly was identified by both co-defendants, and Keatley's inability to identify Kelly at the subsequent line-up was also before the jury. The verdict did not depend on the photo array, and counsel's failure to move to suppress it was not unreasonable. See Medina v. DiGuglielmo, 461 F.3d 417 (3d Cir. 2006). Magistrate Judge Scuderi's recommendation that the claim be denied on the merits is approved.

*Claim 5: Ineffective Assistance of Trial Counsel for Failing to Call Williamina Kelly.*

Kelly claims that counsel erred in failing to call Williamina Kelly as a witness who would provide exculpatory evidence. The Magistrate Judge found this claim was exhausted in state court. The issue again is whether failure to call Ms. Kelly constituted performance so deficient it prejudiced the defense. The Magistrate Judge determined that trial counsel acted reasonably in deciding not to call Williamina Kelly (whose evidence was largely inadmissible). Magistrate Judge Scuderi recommended that the claim be denied on the merits, and this is approved because of the limited benefit of her testimony.

2. <u>Claims 2 and 4</u>

The Magistrate Judge denied both these claims as procedurally defaulted. A federal district court may usually consider the merits of a claim raised in a *habeas* petition only if the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b). A claim is exhausted if the petitioner has fairly presented its substance to the highest court of the state. <u>Landano v. Rafferty</u>, 897 F.2d 661, 673 (3d Cir. 1990). If the claim has not been exhausted and can no longer be raised in state court, then it is considered procedurally defaulted. Procedurally defaulted claims may be considered only if the petitioner demonstrates (1) cause for the default and prejudice from the asserted error; or (2) a fundamentally unjust incarceration, *i.e.*, if the petitioner can show actual innocence. <u>House v. Bell</u>, 126 S.Ct. 2064, 2076 (2006).

*Claim 2: Trial Court Error in Sentencing*

Kelly contends that the sentencing court improperly permitted testimony from a 1980 case

in which Kelly was convicted of another armed robbery. Kelly raised this issue on direct appeal but did not identify it as a federal claim. A federal claim must be clearly identified and should not require the court to read beyond the petition or brief to determine if the claim was fairly presented. Baldwin v. Reese, 541 U.S. 27, 32 (2005). The Magistrate Judge determined that this claim, not having been presented to the highest state court, was unexhausted; it was also procedurally defaulted, because Kelly may no longer file PCRA petitions with respect to it.[15]  See Lines v. Larkin, 208 F.3d 153, 162-63 (3d Cir. 2000); Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005). As a defaulted claim, Kelly must demonstrate both "cause for the default" and "actual prejudice" as a result of the alleged error, or he must establish "actual innocence". Schlup v. Delo, 513 U.S 298, 329-32 (1995).

---

[15] The Magistrate Judge recommended in the alternative that Kelly's Claim 2 be denied on the merits because it challenged a determination of state law. Kelly's claim is that the trial court erred by using facts outside the trial proceedings to enhance petitioner's sentence beyond a life sentence because the prosecution was relieved of establishing all the elements of the crime. Kelly contended on appeal that "[a]t sentencing, the court permitted testimony from Detective Thomas Worrilow, an investigating officer from a 1980 case in which Appellant was convicted of the armed robbery of an elderly couple. (N.T., 9/26/97, pp. 23-29). Detective Worrilow's testimony was not limited to establish the mere fact of an arrest and subsequent conviction. Instead, he testified "in detail about the facts of an ancient case which served only to inflame the court at sentencing." Commonwealth v. Kelly, Brief of Appellant (Direct Appeal), August 21, 1998 (Steven C. Leach, Esq.). The state court record is not clear on whether the sentencing court relied on the details of the 1980 case in sentencing Kelly. Kelly was sentenced within statutory limits, see Commonwealth v. Kelly, No. 01386 Philadelphia 1998, slip op. at 10 (Pa. Supr. Ct. Apr. 20, 1999), and his claim cannot be construed as based on Apprendi v. New Jersey, 530 U.S. 466 (2000). This contention may state a constitutional claim under Blakely v. Washington, 542 U.S. 296 (2004). Because Kelly's direct appeal was completed in 1999, he can succeed on a Blakely challenge to his sentence only if Blakely is retroactively applied to cases on collateral review. See Teague v. Lane, 489 U.S. 288 (1989); Lloyd v. U.S., 407 F.3d 608, 611 (3d Cir. 2005). The Third Circuit Court of Appeals has not decided whether Blakely announced a retroactive new rule. The Supreme Court has recently granted certiorari on that question. See Burton v. Waddington, 126 S.Ct. 2352 (2006). Although under 28 U.S.C. § 2254(b)(2) a court may deny a claim on the merits even when it is forfeited, it would be imprudent to do so at this time.

*Claim 4: Ineffective Assistance of Trial Counsel for Failing to Call James "Ratboy" Faulks (Fowlkes) as an Alibi Witness.*

Kelly claims that James "Ratboy" Fowlkes would have placed Kelly across town at the time the murder occurred and that, had his trial attorney followed up on his recommendation to find Fowlkes, Kelly's alibi would have led the jury to find him not guilty. Kelly raised this issue in his second PCRA petition but did not appeal the PCRA court's decision. Magistrate Judge Scuderi found that the claim was unexhausted and procedurally defaulted.

Because Claim 4 was not exhausted in state court, Kelly must again establish either cause and prejudice as a result of the alleged error, or actual innocence. Schlup v. Delo, 513 U.S. at 319-32.

**a. Cause and Prejudice**

Procedural default may be excused if the petitioner can show both *cause* for the default and actual *prejudice* resulting from the default. See Murray v. Carrier, 477 U.S. 478 (1986); Wainwright v. Sykes, 433 U.S. 72 (1977). "Cause" is "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

Kelly does not offer cause for the default on Claim 2. As to Claim 4, he argues the cause of the default is the ineffective assistance of appellate counsel in failing to pursue the issue. Ineffective assistance of counsel may be "cause" for failure to raise a claim on direct appeal. Fischetti v. Johnson, 384 F.3d 140, 154 (3d Cir. 2004) ("a waiver caused by an improper outright denial of the Sixth Amendment right to counsel constitutes 'cause'") (internal citations omitted).

However, ineffective assistance of counsel can serve as a "cause" for the default of another habeas claim only if it was itself presented as an independent constitutional claim in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Kelly can show "cause" for default of the claim of ineffective assistance of trial counsel for failing to call Fowlkes as a witness only if he has litigated the ineffective assistance of appellate counsel in failing to preserve that issue in the state courts, or if he could be excused from his failure to do so. Kelly did not exhaust his claim of ineffective assistance of appellate counsel; he raised it in his second PCRA petition but did not pursue it on appeal. He does not offer a cause for this failure.[16]

Because Kelly does not show cause for forfeiting Claims 2 and 4, there is no need to discuss whether the alleged errors caused prejudice. The Magistrate Judge properly found Claims 2 and 4 procedurally defaulted under the Supreme Court's "cause and prejudice" standard.

**b. Actual Innocence as Gateway to Merits**

A defaulted habeas claim may be considered by a federal court where the petitioner fails to show cause for the default if the petitioner can show actual innocence. See Murray v. Carrier, 477 U.S. 478, 495 (1986) ("the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration"). The petitioner's claim of innocence "does not itself provide a basis for relief . . . [It is] a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Schlup v. Delo, 513 U.S. 298, 315 (1995).

---

[16] The failure of his PCRA counsel to appeal this claim cannot be considered a "cause" excusing default, because there is no right to effective assistance of counsel in collateral appeals. Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987).

An actual innocence claim requires new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Schlup v Delo, 513 U.S. at 324.  In applying the "actual innocence" standard to a request for an evidentiary hearing, "the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial."  Id, at 331-32.

> The habeas court's analysis is not limited to such evidence . . . ; [it] must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial. . . . The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors...
>
> [It] does not require absolute certainty about the petitioner's guilt or innocence.  A petitioner's burden at the gateway stage is to demonstrate . . . that more likely than not any reasonable juror would have reasonable doubt.
>
> . . . the gateway actual-innocence standard is by no means equivalent to the standard . . . that governs claims of insufficient evidence. . . . Because [an actual-innocence] claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record.

House v. Bell, 126 S.Ct. at 2077-78.

In his objections to the Magistrate Judge's report, Kelly provided evidence from private investigator interviews in 1998 (during his post-sentence motion) and 2002 (during his PCRA appeal) that Fowlkes would have provided solid alibi testimony (Exs. 1(A) and 1(B) of Pet'r's Objections).  This is new evidence that was not presented at trial.[17]  The record is insufficient to determine whether this testimony contradicts the rest of the testimony so credibly that, if it were offered, "more likely than not... no reasonable juror would find him guilty beyond a reasonable

---

[17] The initial investigator's report on Fowlkes' proposed testimony was also not considered at the evidentiary hearing on Kelly's post-sentence motions, which was held after the investigation was authorized but before the report was received.

doubt." House, 126 S.Ct. at 2077.  The state's case against Kelly was built on eyewitness testimony; no forensic or other evidence was presented.  The prosecution's witnesses were two co-defendants, each of whom had a motive to inculpate Kelly in return for a more lenient sentence, and the surviving victim, who identified Kelly in a photo-array but could not identify him in a subsequent line-up.  An evidentiary hearing is required to determine whether Fowlkes' testimony is so convincing that it "undermine[s] confidence in the result of the trial without the assurance that that trial was untainted by constitutional error."  Schlup, 513 U.S. at 317.

If Kelly establishes "actual innocence" at the evidentiary hearing, claims 2 and 4 must be considered on the merits even if they were procedurally defaulted.

### III. Conclusion

The Magistrate Judge's Report and Recommendation is approved and adopted as to petitioner's habeas claims 1, 3, and 5.  The Report and Recommendation is not approved or adopted with regard to habeas claims 2 and 4.  The petition is remanded to Magistrate Judge Scuderi to hold an evidentiary hearing on whether Kelly's claim of actual innocence would be sufficiently established by Fowlkes' testimony.  For the sake of judicial economy, the parties may also present evidence on the underlying constitutional claims.

Counsel will be appointed for the hearing. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN LAMONT KELLY** | : | CIVIL ACTION |
| v. | : | |
| | : | |
| **EDWARD J. KLEM, et al.** | : | NO. 05-3843 |
| | : | |
| | : | |
| Norma L. Shapiro, S.J. | : | October 6, 2006 |

## ORDER

**AND NOW**, this 6th day of October, 2006, upon consideration of Magistrate Judge Scuderi's Report and Recommendation, petitioner's objections thereto, and all other relevant papers, for the reasons included in the accompanying memorandum, it is **ORDERED**:

1. The Report and Recommendation (Paper #12) is **APPROVED** with regard to petitioner's habeas claims of:

   (1) Ineffective assistance of counsel for failure to call Ernest Carter and Williamina Kelly as alibi witnesses.

   (3) Ineffective assistance of counsel for failure to move to suppress the improper photo array; and

   (5) Ineffective assistance of counsel for failure to call Williamina Kelly as a witness.

2. The Report and Recommendation (paper #12) is **NOT APPROVED AT THIS TIME** with regard to petitioner's habeas claim 2 (use of unproven facts at sentencing) and claim 4 (ineffective assistance of counsel for failure to investigate and call potential witness James "Ratboy" Fowlkes).

3.  The action is **REMANDED** to Magistrate Judge Scuderi to conduct an evidentiary hearing consistent with this memorandum and submit a supplemental Report and Recommendation on whether (1) Kelly can establish "actual innocence" sufficient to consider his defaulted claims on the merits, i.e., whether the testimony of James Fowlkes would make it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," Schlup v. Delo, 513 U.S. 298, 327 (1995) ; and, if so, (2) whether Kelly's Claims 2 and 4 have merit.

4. The Warden of SCI Mahanoy will be directed to produce the body of Kevin Lamont Kelly, Inmate No. EF-1350, for the evidentiary hearing to be held at a date determined by The Honorable Peter B. Scuderi, United States Magistrate Judge.  Counsel shall be appointed.

/s/ Norma L. Shapiro

S.J.